Edwin **PAGDILAO**, Plaintiff,

v.

**MAUI INTERCONTINENTAL HOTEL,** Defendant.

Civ. No. 87–0635 HMF.

United States District Court,
D. Hawaii.

Oct. 13, 1988.

Stephen Garcia, Wailuku, Maui, Hawaii, for plaintiff.

Robert Katz, Gregory Sato, Torkildson, Katz, Jossem, Honolulu, Hawaii, for defendant.

## ORDER GRANTING
## SUMMARY JUDGMENT

FONG, Chief Judge.

This case came on for hearing before the court on defendant's motion for summary judgment. Stephen Garcia appeared on behalf of plaintiff, and Gregory Sato appeared on behalf of defendant. The court, having reviewed the motion and the memoranda in support thereof and in opposition thereto, having heard the oral arguments of counsel, and being fully advised as to the premises herein, finds as follows:

### BACKGROUND

This case arises out of the termination of plaintiff Edwin P. Pagdilao from his employment as a bellman with the Maui Inter–Continental Hotel ("hotel"). The hotel terminated plaintiff's employment on September 10, 1986, for insubordination and swearing at the Director of Security, Chuck Ornellas, at a company picnic. Plaintiff had been employed with the hotel since August, 1976.

In 1982, plaintiff was involved in an incident at the annual employee picnic. Late in the afternoon, after drinking several glasses of beer, plaintiff was sitting on a cart and observed a fellow employee, Keith Anderson, running past him. Plaintiff stuck out his foot with the intention of tripping Anderson but instead his foot hit Anderson in the stomach. Anderson doubled over on the ground. Plaintiff went over to Anderson to apologize and to shake his hand, and when Anderson refused to shake his hand, plaintiff got angry and using his head, he "speared" Anderson in the chest. A few days later, plaintiff wrote Anderson a letter of apology.

Management did not ignore this incident and plaintiff received a written memorandum that was signed by his Department Head, the Personnel Manager, and the General Manager. The warning notice stated as follows:

Regarding the incident at the employee picnic where Keith Anderson was hit by you, if this should happen again, you can be assured that stronger action will be taken.

In 1986, plaintiff was involved in another incident at the employee picnic, and this time it resulted in his termination. During the course of the picnic, plaintiff drank about twenty glasses of beer. At about 4:00 p.m., Ornellas ordered the bar closed in order to allow employees an hour without drinking before going home. When Ornellas closed the bar, plaintiff was unhappy with Ornellas.

Plaintiff walked over to Ornellas and James Purdy, the Director of Sales, who were talking together. Plaintiff held in his hand a two foot long steel pipe that had been used to hold down the volleyball net. Plaintiff swung the pipe as he talked to Ornellas and Purdy. Plaintiff told Ornellas that the party was "junk" and he complained about his closing the bar before the party was over. Plaintiff told Ornellas, "That's the 'haole' style." Ornellas replied that the memo stated the bar would close at 4:00 p.m., and plaintiff said that "the hotel was supposed to take care of us but they not" and he used profane language. Ornellas told plaintiff that he could not say these things just because he was drunk.

As plaintiff started to leave the party, he heard Ornellas say "Eddie, you're drunk." This statement infuriated plaintiff and he repeatedly shouted profanities at Ornellas. Plaintiff also stuck out the middle finger from each of his hands and alternately pumped his hands up and down in the air while yelling profanities at Ornellas. Plaintiff continued in this manner walking backwards up the hill to the parking lot, a distance of 20 feet.

Many employees and many department heads observed this incident. After the incident, Ornellas prepared a Report and Recommendation that the hotel terminate plaintiff's employment.

On Tuesday, September 2, 1986, the incident was mentioned at a staff meeting and plaintiff's supervisor, who had not attended the party, was instructed to investigate. That same day, plaintiff saw Ornellas and Purdy and he apologized to them.

On Tuesday afternoon, plaintiff's supervisor, the Front Office Manager, and the Bell Captain met with plaintiff to listen to his side of the story. After this meeting, plaintiff's supervisor met with the Personnel Director, Alice Fraser, and Ornellas to discuss the matter. Based upon all of the information he received, plaintiff's supervisor decided to terminate plaintiff for insubordination and swearing. Plaintiff was advised of this decision and he was given one week to "fight it" by making use of the hotel's Kokua or grievance procedure. The Kokua Procedure is a mechanism for resolving employee complaints and provides for a review of employment decisions at different management levels.

Plaintiff, a friend of plaintiff, and an eye witness to the incident all prepared statements which were given to personnel. Pursuant to the Kokua procedure, plaintiff met with Dinger, the Executive Assistant Manager. Dinger reviewed the statements, the security report, and plaintiff's past record. Dinger told plaintiff that he had a drinking problem and that he gets angry when he gets drunk. Plaintiff agreed that this was true.

Plaintiff's employment was terminated.

Plaintiff brought this lawsuit alleging breach of an implied-in-fact contract; wrongful discharge in violation of a public policy; and emotional distress as a result of his termination. Plaintiff's claims for breach of the duty of good faith and fair dealing and for loss of reputation were dismissed in state court while the action was pending there. Defendants now move the court for summary judgment on plaintiff's remaining claims.

## DISCUSSION

### A. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered when:

... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 265 (1986). The movant must be able to show "the absence of a material and triable issue of fact," *Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir.1987), although it need not necessarily advance affidavits or similar materials to negate the existence of an issue on which the non-moving party will bear the burden of proof at trial. *Cal. Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987). *See Celotex*, 106 S.Ct. at 2553. *But cf. id.* at 2555–56 (White, J., concurring).

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support his legal theory. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir.1979). The opposing party cannot stand on his pleadings, nor can he simply assert that he will be able to discredit the movant's evidence at trial. *See T.W. Electrical*, 809 F.2d at 630. Similarly, legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Moreover, "if the factual context makes the nonmoving party's claim *implausible*, that party must come forward with more persuasive evidence

than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics*, 818 F.2d at 1468, citing *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1289, citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

However, when "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Electrical*, 809 F.2d at 631. Also, inferences from the facts must be drawn in the light most favorable to the non-moving party. *Id.* Inferences may be drawn both from underlying facts that are not in dispute, as well as from disputed facts which the judge is required to resolve in favor of the non-moving party. *Id.*

*B. Employment At Will*

■ Absent an employment contract for a definite period of time, employment-at-will is the rule in Hawaii, and has been since the Hawaii Supreme Court decided *Crawford v. Stewart*, 25 Haw. 226 (1919). Under the doctrine of employment-at-will, employment agreements are "terminable at the will of either party, for any reason or for no reason." *Parnar v. Americana Hotels, Inc.*, 65 Haw. 370, 374, 652 P.2d 625 (1982). The Hawaii Supreme Court has created two exceptions to employment-at-will: (1) the public policy exception and (2) the implied in fact contract exception. Under the first exception, "an employer may be held liable in tort where his discharge of an employee violates a clear mandate of public policy." *Parnar*, 65 Haw. at 379, 652 P.2d 625. Under the second exception, the "unfettered right of employers to dis-charge employees 'can be contractually modified and, thus, qualified by statements contained in employee policy handbooks issued by employers to their employees.'" *Kinoshita v. Canadian Pacific Airlines, Inc.*, 724 P.2d 110, 116.

In the present case, plaintiff's employment was not subject to a contract which specified a definite period of employment, and thus, plaintiff's employment was terminable at will. Plaintiff argues that this case falls within both exceptions to the doctrine of employment-at-will, and thus he should have a cause of action for wrongful termination. Defendant, on the other hand, argues that neither exception applies in this case, and thus, plaintiff was terminable at will.

*C. Contract Implied in Fact*

Defendant argues that plaintiff's employment was terminable at will both because of the absence of an employment contract, and also because plaintiff signed an "Application Agreement" in which he affirmatively acknowledged his at-will employment status. That agreement provided as follows:

> It is understood that if engaged, my employment may be terminated *at any time*, either by myself or the hotel.

Defendant argues that the express disclaimer on the employment application should preserve the at-will employment arrangement, and should preclude a claim for wrongful discharge based upon an implied-in-fact contract theory.

The Hawaii Supreme Court has not decided the significance of an express statement, acknowledged by the employee, of the employee's at-will employment status. In absence of controlling state law, a "federal court sitting in diversity must use its own best judgment in predicting how the state's highest court would decide the case." *Takahashi v. Loomis Armored Car Service*, 625 F.2d 314, 316 (9th Cir. 1980). In reaching its decision, the federal court may seek guidance from case law in other jurisdictions.

■ Defendants cite a number of cases from other jurisdictions for the proposition

that where an employee executes an express disclaimer he cannot maintain a cause of action for wrongful discharge based upon the implied-in-fact contract theory. Under the Erie doctrine, however, state judicial decisions of the forum state are binding on federal courts in diversity actions and federal courts are not free to engraft upon these state decisions, exceptions or modifications which have not been adopted by the state court. *Stancil v. Mergenthaler Linotype Co.*, 589 F.Supp. 78, 81 (D.Haw.1984).

The Hawaii Supreme Court recognized the implied-in-fact contract exception to the employment-at-will doctrine in *Kinoshita.* In that case, the court held that an employer was bound by policies and procedures set forth in the Employee Rules because the company was "striving to create an atmosphere of job security and fair treatment"; and it "attempted to do so with specific treatment in specific situations"; and "it encouraged reliance thereon." *Kinoshita*, 724 P.2d at 117. This court cannot predict that given a situation like the one in *Kinoshita*, and a disclaimer contained in the employment application like the one in the instant case, the Hawaii Supreme Court would hold that contract modification was precluded. Since the Hawaii Supreme Court created the rule that employment-at-will could be modified by contract implied-in-fact, and has not yet carved out exceptions to that rule, this court declines to create such exceptions. For this reason, the court declines to pronounce a rule that employment-at-will disclaimers categorically preclude an argument based on implied-in-fact contract or contract modification.

■ In the instant case, however, plaintiff's action for breach of contract implied-in-fact fails for another reason. Plaintiff's implied-in-fact contract claim is based upon the Employee Handbook. That Handbook contains a "Kokua Procedure" which provides guidelines for resolving employment disputes. The Handbook states that the Kokua Procedure should be used when

an employee is unhappy due to his/her terms and conditions of employment, the interpretation or application of a company policy or house rule, or any action of management and supervisory personnel affecting an employee's employment status.

In addition, the Handbook contains "House Rules and Regulations" proscribing employee conduct. Violation of these house rules by any employee could result in disciplinary action or termination.

Plaintiff argues that the Kokua Procedure when read in conjunction with the House Rules established an implied contract between defendant and its employees that disciplinary action or termination would result for specified violations of House Rules or "for cause," only after the proper procedures under the Kokua Procedure had been followed. Even assuming that an implied-in-fact contract based on the Kokua procedure existed, it is undisputed that the Kokua Procedure was satisfied in the present case. The Kokua Procedure provides for the review of employment decisions by the supervisor, department head, resident manager, and general manager or his designee. Plaintiff testified in his deposition that he discussed his termination with Fraser, the Personnel Director, and Takayama, his department head, and with Dinger, the Executive Assistant Manager, who was also the General Manager's designee. Plaintiff admits that he was given the opportunity and did exhaust the Kokua Procedure.

The court thus finds that plaintiff was given all that was promised to him in the Employee Handbook. While it might be debatable whether the "House Rules" apply at company social functions, the court finds that termination is not limited to cases in which the employee breaks the House Rules. The only promise to employees is that they will be permitted to pursue the Kokua Procedure. Plaintiff admits that he was afforded this opportunity. Thus, there is no issue of fact with respect to plaintiff's claim for breach of implied contract, and accordingly, defendant's motion for summary judgment on that claim is GRANTED.

**868**

### D. Public Policy

 Under the public policy exception to the employment-at-will doctrine, plaintiff must prove that termination of his employment violates a clear mandate of public policy. *See Parnar*, 65 Haw. at 374, 652 P.2d 625. Plaintiff argues that his termination violates his constitutional rights to freedom of speech and privacy. The court finds plaintiff's arguments unavailing.

In creating the public policy exception to the employment-at-will doctrine, the Hawaii Supreme Court quoted from *Petermann v. International Brotherhood of Teamsters*, 174 Cal.App.2d 184, 344 P.2d 25 (1959), stating that the term " 'public policy' may comprehend 'that which has a tendency to be injurious to the public or against the public good' and 'whatever contravenes good morals or any established interests of society ...' " *Parnar*, 65 Haw. at 378, 652 P.2d 625. Plaintiff has failed to present any arguments or authority to support his assertion that a barrage of profanities at a company picnic is for the "public good" or in the "interests of society." The court does not find that the values of freedom of speech or privacy are promoted by this kind of behavior. Thus, the court finds as a matter of law that the defendant did not violate any clear mandate of public policy by terminating plaintiff for profanity and insubordination. There being no issue of fact with respect to violation of public policy, defendant's motion for summary judgment is GRANTED on that claim.

### E. Emotional Distress

Plaintiff's claim for emotional distress is based upon his claim of wrongful termination. Since this court finds that there are no genuine issues of material fact with respect to plaintiff's claim of wrongful termination, plaintiff has no basis for his claim of emotional distress. Accordingly, summary judgment is GRANTED on this claim.

### CONCLUSION

The court finds that there is no genuine issue of material fact with respect to plaintiff's claim for wrongful termination in breach of an implied-in-fact contract or in violation of public policy. The court further finds that there is no genuine issue of material fact with respect to plaintiff's claim for emotional distress. Accordingly, summary judgment is granted in favor of defendant.

IT IS SO ORDERED.