(922 P.2d 1097)
No. 73,313 ■

GARY ALLSUP, *Appellant,* v. MOUNT CARMEL MEDICAL CENTER, *Appellee.*

Opinion filed March 22, 1996.

*Fred Spigarelli* and *Pamela G. Phalen,* of Spigarelli, McLane & Short, of Pittsburg, for appellant.

*Richard W. Noble,* of Richard W. Noble, P.C., of Kansas City, Missouri, and *Donald C. Bollard,* of Sherman, Taff & Bangert, P.C., of Leawood, for appellee.

Before BRAZIL, C.J., MARQUARDT, J., and RICHARD M. SMITH, District Judge, assigned.

MARQUARDT, J.: Gary Allsup appeals from the decision of the district court which granted summary judgment in favor of Mount Carmel Medical Center (Mount Carmel). Allsup contends that he was discharged in violation of an implied contract of employment.

Prior to March 4, 1992, Allsup was employed by Mount Carmel as vice-president of Human Resources. The parties agree that "[Allsup] was an employee entitled to the benefit of [Mount Carmel's] policies regarding the requirement of just cause for discipline, progressive discipline and grievance procedure." Neither party cites any language in Mount Carmel's policies that would give rise to an implied contract; however, for the purposes of this appeal, it is considered fact that an implied contract existed because both parties agree.

Mount Carmel states that "Mount Carmel's President terminated [Allsup's] employment for various job related reasons." The facts underlying Allsup's termination are not at issue in this appeal. Both parties agree that Allsup's last day of employment with Mount Carmel was March 4, 1992.

Mount Carmel filed a motion for summary judgment which stated: "[P]laintiff is estopped from asserting a claim for wrongful termination because the implied contract on which he relies provided for the filing of a grievance to Defendant's Administrator (CEO) as the final step in any review of employment termination."

The memorandum in support of the summary judgment motion stated in part:

"Plaintiff's action is one for wrongful discharge under an alleged implied employment contract based on certain alleged policies of [Mount Carmel]. Mount Carmel for the purpose of its Motion for Summary Judgment assumes arguendo the existence of such an implied employment contract based on its alleged policies.

. . .

". . . [F]or the purpose of the instant Motion for Summary Judgment, Defendant Mount Carmel *assumes arguendo* that the following of Plaintiff's contentions are uncontroverted.

"1. The basis for Plaintiff's claim of wrongful termination is Defendant's (alleged) policies regarding the requirement of just cause for termination of employment, progressive discipline dependent upon the infraction committed, and the hospital's grievance procedure. . . .

"2. Plaintiff was an employee entitled to the benefit of Defendant's policies regarding the requirement of just cause for discipline, progressive discipline and grievance procedure."

Both parties agreed to paragraphs 1 and 2 as uncontroverted facts.

Mount Carmel also had a policy which provided a grievance procedure for an aggrieved employee. The policy provided in part: "It is the policy of Mt. Carmel Medical Center to provide a means whereby an employee may present a complaint regarding conditions of employment, or interpretation, and/or application of policies in an orderly manner without fear of recrimination."

The grievance procedure provided a four-step process. The first step was to bring the problem to the attention of the employee's immediate supervisor. If a satisfactory solution was not reached, then the second step required in part that "[t]he employee . . . prepare the complaint, including relief requested, in written form and present the written grievance to the Department Manager." The third step was similar to the second in that a written complaint was to be presented to the "Division Director." The fourth step provided:

"If a solution is not reached by this point, the Director of Personnel will review the case with the Administrator and arrange such meetings as necessary to assure that all facts in the case are known. *The decision of the Administrator is final* and will be transmitted to concerned parties in written form by the Director of Personnel." (Emphasis added.)

Allsup admits that he did not file a written grievance under the procedure provided, and the district court noted that "plaintiff does not contend that there were any obligations owed to him based upon any oral statements." Therefore, all claims of either party are based on the written policies of Mount Carmel. However, the only policy that is in question in this appeal is the grievance procedure and whether it is discretionary on the part of the employee.

In granting Mount Carmel's motion for summary judgment, the district court concluded that "[a]ssuming that an implied contract was created by the documents plaintiff relies on, the terms thereof are that plaintiff may file a grievance and that the Administrator has the final say." Thus, the district court agreed with Mount Carmel that Allsup's *sole* avenue for redress of his claim of unjust termination was through the grievance procedure contained within the policies upon which plaintiff relies for his implied contract of employment."

Allsup argues that the language of the grievance procedure indicates that it was optional. Allsup reasons that if he could only be terminated for just cause and the grievance procedure was optional, he has a valid cause of action for breach of an implied contract of employment.

A. *Standard of Review*

Summary judgment is appropriate when the documents on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. K.S.A. 60-256(c); *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 166, 872 P.2d 252 (1994).

The district court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party opposing the motion. *Kastner v. Blue Cross & Blue Shield of Kansas, Inc.*, 21 Kan. App. 2d 16, 21-22, 894 P.2d 909, *rev. denied* 257 Kan. 1092 (1995).

Similarly, "[i]n reviewing a summary judgment, an appellate court must read the record in the light most favorable to the party who opposed the motion." *Morriss v. Coleman Co.*, 241 Kan. 501, 502, 738 P.2d 841 (1987). Thus, this court must give Allsup the benefit of all reasonable inferences arising from the record.

B. *Terms of the Implied Contract*

Mount Carmel, for the purpose of its motion for summary judgment, assumed the existence of an implied employment contract based on its policies. It is uncontroverted that "[Allsup] was an employee entitled to the benefit of [Mount Carmel's] policies regarding the requirement of just cause for discipline, progressive

discipline and grievance procedure." Except for the grievance procedure, neither party cites to any policies or to the record to support the allegation that Allsup could only be terminated for cause.

For the purposes of the summary judgment motion, an implied employment contract existed between Mount Carmel and Allsup based on Mount Carmel's policies. See *Morriss*, 241 Kan. at 502.

### C. *Implied Contract*

"Kansas has long adhered to the doctrine of employment-at-will." *Ortega v. IBP, Inc.*, 255 Kan. 513, 516, 874 P.2d 1188 (1994). In *Johnson v. National Beef Packing Co.*, 220 Kan. 52, 54, 551 P.2d 779 (1976), the court stated the oft-quoted rule:

"[I]n the absence of a contract, express or implied, between an employee and [an] employer covering the duration of employment, the employment is terminable at the will of either party, and the employee states no cause of action for breach of contract by alleging that he has been discharged."

Thus, in Kansas, an employer may discharge an "at-will employee" for good cause, for no cause, or even for a wrong cause, without incurring liability to the employee for wrongful discharge. *Morriss*, 241 Kan. at 508; *Kastner*, 21 Kan. App. 2d at 22. Because of the potential for harsh results arising from the employment-at-will doctrine, judicially created exceptions have eroded the doctrine. *Morriss*, 241 Kan. at 509; see *Ortega*, 255 Kan. at 516.

Kansas recognizes an exception to the employment-at-will doctrine where there has been an implied agreement to the contrary. See *Kastner*, 21 Kan. App. 2d at 22-23. See generally Worth and Landis, *Fire at Will? The Status of Judicially Created Exceptions to Employment-at-Will in Kansas*, 64 J.K.B.A. 22 (Feb./Mar. 1995). The implied contract theory "recognizes an implied obligation on the employer to not terminate an employee arbitrarily where a policy or program of the employer, either express or implied, restricts the employer's right of termination at will." *Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, 135, 815 P.2d 72 (1991). Thus, the employer is barred "from violating its own policies in discharging an employee." *Morriss*, 241 Kan. at 509.

" 'A contract implied in fact arises from facts and circumstances showing mutual intent to contract.' " *Allegri v. Providence-St. Mar-*

*garet Health Center*, 9 Kan. App. 2d 659, 663, 684 P.2d 1031 (1984) (quoting *Mai v. Youtsey*, 231 Kan. 419, 422, 646 P.2d 475 [1982]). In *Morriss*, 241 Kan. 501, Syl. ¶ 1, the court adopted the factors to consider in evaluating an implied contract as stated in *Allegri*, 9 Kan. App. 2d 659, Syl. ¶ 5. However, Mount Carmel and Allsup agree that the implied contract of employment is controlled solely by the policies of Mount Carmel. References are made to a policy requiring just cause for termination; however, the policy is not included in the record and, therefore, cannot be considered by this court.

Mount Carmel and Allsup admitted that an implied contract existed based solely on Mount Carmel's policies.

D. *Employee Procedure for Recourse*

Allsup points to the language in the grievance procedure in support of his assertion that it was not his exclusive remedy. Specifically, Allsup notes that the grievance procedure provided that "an employee *may* present a complaint." The grievance procedure is the only document in the record cited to by either party that deals with an employee's recourse if aggrieved by Mount Carmel.

Mount Carmel argues that its "voluntary restriction of its common law rights was limited by the requirement that alleged violations of the rights granted be subject to only an internal review." As noted above, the district court essentially agreed with Mount Carmel.

In *Plummer v. Humana of Kansas, Inc.*, 715 F. Supp. 302, 304 (D. Kan. 1988), the court stated:

"Even if an employment contract did exist, Plummer would certainly be bound by that contract's terms. The Handbook provided that if an employee felt Humana had violated its own policies, the employee's sole recourse was to use the grievance procedure. Plummer admits that he failed to use Humana's grievance procedure after Humana terminated him without following progressive disciplinary procedures. . . . Therefore, even if a contract did exist, summary judgment is appropriate because plaintiff failed to follow the company grievance procedure as required by the contract."

Allsup attempts to distinguish *Plummer* on the basis that the language of Mount Carmel's grievance procedure was permissive, while the language of the policy in *Plummer* was mandatory. The

Mount Carmel grievance procedure, however, provided that "[t]he decision of the Administrator is final." As such, the terms of the grievance procedure limited the employee's recourse to the procedure provided. Filing a grievance was optional, but under the terms of the policy, it was the only option. The issue is whether this limitation in the grievance policy truly limits the employee's recourse.

The rule that an employee's recourse is limited to the procedures provided in the documents giving rise to the implied contract is most often stated in cases where the contract did not make the employee terminable only for cause. Stated otherwise, the employee was still an employee-at-will with merely certain procedural protections. See *Francis v. Memorial General Hosp.*, 104 N.M. 698, 699, 726 P.2d 852 (1986) (citing *Forrester v. Parker*, 93 N.M. 781, 606 P.2d 191 [1980]). For example, the *Plummer* court found that "unlike *Morriss*, there is no evidence that management indicated dismissals would only be 'for cause.' " 715 F. Supp. at 304; see *Suburban Hospital, Inc. v. Dwiggins*, 324 Md. 294, 305, 596 A.2d 1069 (1991).

A rule similar to that stated in *Plummer* and *Dwiggins* has been stated in the public employee context where the employee does not have a property interest in continued employment sufficient to invoke due process rights. See *Carnes v. Parker*, 922 F.2d 1506, 1511 (10th Cir. 1991) ("Although procedural protections themselves are not sufficient to create a property interest in continued employment, they can sustain an entitlement to the procedures themselves."). Thus, *Carnes* describes a public employee-at-will with entitlement to certain procedures.

The instant action should be distinguished from public employee cases that implicate due process rights. See *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985). Where an employee is entitled to due process, the procedure provided does not limit the substantive right. *Loudermill*, 470 U.S. at 541. A public employee who may only be discharged for cause possesses a due process right to notice and a hearing. See *Gorham v. City of Kansas City*, 225 Kan. 369, 373, 590 P.2d 1051 (1979).

Allsup does not allege the necessary state action to give rise to due process rights. See *Wertz v. Southern Cloud Unified School District*, 218 Kan. 25, 29, 542 P.2d 339 (1975). Thus, the cases involving due process rights arising from a property interest in continued employment do not directly apply. See *Kosik v. Cloud County Community College*, 250 Kan. 507, 512-13, 827 P.2d 59, *cert. denied* 506 U.S. 867 (1992); *Gorham*, 225 Kan. 369, Syl. ¶ 1.

For purposes of this action, Allsup was a private employee with an implied contract of employment. Cases arising in this context appear to limit the employee to the recourse provided in the documents giving rise to the implied contract.

In *Pagdilao v. Maui Intercontinental Hotel*, 703 F. Supp. 863 (D. Hawaii 1988), a hotel employee became very intoxicated and obnoxious at several employee picnics. During what turned out to be the final such incident, Pagdilao "stuck out the middle finger from each of his hands and alternately pumped his hands up and down in the air while yelling profanities at [the director of security]." 703 F. Supp. at 864. Pagdilao continued in this manner while walking backwards up a hill. The director of security prepared a report recommending that the hotel terminate Pagdilao's employment, and the hotel did so.

Hawaii law recognizes the implied contract exception to the doctrine of employment-at-will. 703 F. Supp. at 866. Thus, "the 'unfettered right of employers to discharge employees "can be contractually modified and, thus, qualified by statements contained in employee policy handbooks issued by employers to their employees." ' [Citation omitted.]" 703 F. Supp. at 866.

Pagdilao's implied contract claim was based on an employee handbook. The handbook contained both "House Rules and Regulations," which described certain employee conduct as grounds for discipline or termination and a "Kokua Procedure," which provided guidelines for resolving employment disputes. 703 F. Supp. at 867. The *Pagdilao* court stated:

"Plaintiff argues that the Kokua Procedure when read in conjunction with the House Rules established an implied contract between defendant and its employees that disciplinary action or termination would result for specified violations of House Rules or *'for cause,'* only after the proper procedures under the Kokua

Procedure had been followed. Even assuming that an implied-in-fact contract based on the Kokua Procedure existed, it is undisputed that the Kokua Procedure was satisfied in the present case. The Kokua Procedure provides for the review of employment decisions by the supervisor, department head, resident manager, and general manager or his designee. . . . Plaintiff admits that he was given the opportunity and did exhaust the Kokua Procedure.

"The court thus finds that plaintiff was given all that was promised to him in the Employee Handbook. While it might be debatable whether the 'House Rules' apply at company social functions, the court finds that termination is not limited to cases in which the employee breaks the House Rules. *The only promise to employees is that they will be permitted to pursue the Kokua Procedure.* Plaintiff admits that he was afforded this opportunity. Thus, there is no issue of fact with respect to plaintiff's claim for breach of implied contract, and accordingly, defendant's motion for summary judgment on that claim is GRANTED." (Emphasis added.) 703 F. Supp. at 867.

Thus, the *Pagdilao* court evaluated a private employee who was arguably terminable only for cause and concluded that the employee's recourse was limited to the procedure provided in the employee handbook. 703 F. Supp. at 866-67.

In 2 Rothstein, Employment Law § 9.8, p. 265 (1994), the authors state: "Many public sector employees are entitled to procedural due process before they may be fired, [citation omitted] but private sector employees enjoy only the procedural rights provided for in their employment contracts."

Similarly, in *Meleen v. Hazelden Foundation*, 740 F. Supp. 687, 692 (D. Minn. 1990), *aff'd* 928 F.2d 795 (8th Cir. 1991), the court stated:

"Plaintiff got all the procedure she was due under the employment contract. She, perhaps understandably, would like something more. But, this was a private contract; no right to constitutional due process or proof beyond a reasonable doubt existed. Plaintiff's private expectations and due process concepts are not part of the employment contract."

The terms of Allsup's implied contract are contained only in Mount Carmel's policies. Thus, all Mount Carmel promised was that employees would be allowed to pursue the grievance procedure. Allsup cannot avail himself of procedures and benefits not contained in his implied contract. In accepting the benefits of the implied contract, Allsup must accept the obligations as well. Allsup

chose to claim he had an implied contract but now argues that he is not bound by the grievance procedure.

Without this implied contract, Allsup would be an employee-at-will with no recourse. With an implied contract, the only terms that apply are those written in the grievance procedure. By Allsup availing himself of the benefits (contending he has an implied contract by virtue of Mount Carmel's policies), Allsup must also accept the responsibilities of the policies—the grievance procedure.

In the alternative, Allsup argues that if his recourse was limited to the grievance procedure specified in the company handbook, then "it is an invalid attempt at a waiver of [his] right to due process and should not be enforced."

Mount Carmel argues that Allsup is improperly asserting constitutional issues "that were neither presented nor preserved before the District Court." It is true that " '[w]here constitutional grounds for reversal are asserted for the first time on appeal, they are not properly before the appellate court for review.' " *Peterson v. Garvey Elevators, Inc.*, 252 Kan. 976, 980, 850 P.2d 893 (1993).

Allsup responds that because Mount Carmel and the district court relied on *Gorham*, a case that discusses due process rights for public employees, Allsup is entitled to distinguish and address the constitutional issues discussed in *Gorham*. See 225 Kan. at 373-74.

Allsup is certainly entitled to distinguish authority relied on in an unfavorable district court decision and by opposing counsel. Allsup, however, relies on the due process grounds as an alternative to the implied contract theory. Allsup did not make a due process argument to the district court. Thus, Allsup improperly raises the due process argument for the first time on appeal. *In re Appeal of City of Lenexa*, 232 Kan. 568, 587, 657 P.2d 47 (1983).

Allsup's alternative due process argument is not properly before this court.

Affirmed.