**PUBLISH**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**June 11, 2012**

**TENTH CIRCUIT**

**Elisabeth A. Shumaker**
**Clerk of Court**

DAVID R. RIBEAU, JR.,

      Plaintiff - Appellant,

v.

No. 11-3205

DEAN KATT; RICHARD SMITH,

      Defendants - Appellees.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 2:10-CV-02104-EFM)**

Danielle N. Davey (Alan V. Johnson, on the briefs), Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., Topeka, Kansas, appearing for Appellant.

William A. Larson, Larson & Blumreich, Chartered, Topeka, Kansas, appearing for Appellees.

Before **LUCERO, HOLLOWAY,** and **MATHESON,** Circuit Judges.

**MATHESON**, Circuit Judge.

      David R. Ribeau, Jr., appeals from the district court's order granting summary

judgment to Dean Katt and Richard Smith (the "Defendants"). The district court

dismissed Mr. Ribeau's 42 U.S.C. § 1983 claim alleging that the Defendants violated his

right to procedural due process under the Fourteenth Amendment to the U.S. Constitution.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I.     BACKGROUND

### A. *Factual History*

### 1. *Mr. Ribeau's Termination*

Unified School District 290 ("USD 290"), located in Ottawa, Kansas, hired Mr. Ribeau as a maintenance mechanic in 1984.  Over the years, he was promoted, assumed various job titles, and took on supervisory duties.

Mr. Smith was Mr. Ribeau's immediate supervisor.  On February 27, 2008, Mr. Smith and Mr. Katt, USD 290's superintendent, decided to terminate Mr. Ribeau's employment based on his alleged poor work performance.  Mr. Smith informed Mr. Ribeau of his termination that day.

When Mr. Smith told Mr. Ribeau of his termination, Mr. Smith stated that the USD 290 Board of Education (the "Board") had already given its approval.  About a week later, Mr. Katt also told Mr. Ribeau that the Board had approved his termination.

Due to the Defendants' representations, Mr. Ribeau believed he could not file a grievance because the Board had already approved his termination.  The Board, however, had not yet given its approval.  The Board did not approve Mr. Ribeau's termination until

the second Monday or the fourth Monday of March 2008.[1]

## 2. *Mr. Ribeau's Employment Agreement*

During Mr. Ribeau's employment, he signed 23 separate employment agreements. Each agreement stated that Mr. Ribeau was an at-will employee.

When Mr. Ribeau was terminated, his employment agreement stated that his "[e]mployment [could] be terminated by either party at any time, for any reason." Aplt. Appx. at 60. It also stated that Mr. Ribeau "agree[d] to observe, enforce, and be directed by rules and regulations adopted by the Board." *Id.*

The Board had adopted a Classified Staff Handbook (the "Handbook"), which included provisions on employee suspension, termination, and grievances. The Handbook's suspension provision granted the superintendent "the authority to suspend classified employees with pay until the suspension is resolved by [B]oard action." *Id.* at 68. The termination provision stated, "The [B]oard may terminate a classified employee at any time, with or without cause." *Id.* The grievance provision stated that "[a]ny employee may file a complaint with their supervisor concerning a school rule, regulation, policy or decision that affects the employee." *Id.* Under this provision, the employee could appeal the supervisor's decision to the superintendent, whose decision would be final.

---

[1]The Defendants state that the Board approved Mr. Ribeau's termination on the second Monday or the fourth Monday of April 2008. Despite their disagreement over the exact date of the Board's approval, the parties agree that the approval occurred after Mr. Ribeau's initial discussions with Mr. Smith and Mr. Katt.

Mr. Katt testified at his deposition that before classified employees are terminated, "[t]hey are given an opportunity to present to myself and the [S]chool [B]oard." *Id.* at 72. Mr. Ribeau similarly testified at his deposition that when he recommended employees in his department for termination, he told them that his recommendation "would be taken up at the next Board meeting" and that they had until "the next Board meeting to file a written grievance, [and] take it to the Superintendent." *Id.* at 64.

## B. *Procedural History*

In February 2010, Mr. Ribeau sued Mr. Katt and Mr. Smith. His 42 U.S.C. § 1983 claim alleged that they had deprived him of his property interest in continued employment without due process of law, in violation of his rights under the Fourteenth Amendment.[2] Messrs. Katt and Smith moved for summary judgment on October 15, 2010.

The district court granted the Defendants' motion, holding that because Mr. Ribeau was an at-will employee, he did not have a protected property interest in his continued employment. *See Ribeau v. U.S.D. No. 290*, Nos. 08-2659-EFM, 10-2104-EFM, 2011 WL 1118515, at \*6 (D. Kan. Mar. 25, 2011).

Mr. Ribeau moved to alter or amend the district court's judgment under Rule 59(e) of the Federal Rules of Civil Procedure. He requested that the court address an "alternative property interest . . . separate and distinct from his alleged property interest

___

[2]Mr. Ribeau also sued USD 290, claiming that he was discriminated against based on his age. This appeal does not concern Mr. Ribeau's action against USD 290.

in his continued employment." Aplt. Appx. at 126. This property interest was an implied "contract right to be heard by the Board of Education itself before the Board decided to terminate [Mr. Ribeau's] employment." *Id.*

The district court denied Mr. Ribeau's Rule 59(e) motion on June 22, 2011. It explained that Mr. Ribeau "did not have an implied right to be heard by the [B]oard" because the Handbook "does not provide for the right to be heard by the [B]oard before termination." *Id.* at 134.[3] Mr. Ribeau filed a timely notice of appeal on July 19, 2011.

## II.    DISCUSSION

Mr. Ribeau appeals the district court's summary judgment order dismissing his procedural due process claim. He "does not appeal the district court's ruling as to the claim that he had a property interest in a right to continued employment." Aplt. Br. at 8. Instead, he asserts that he was deprived of his "property interest in a right to be heard by the Board" before his termination. *Id.*

"We review the district court's summary judgment order de novo, and apply the same legal standards as the district court." *Doe v. City of Albuquerque*, 667 F.3d 1111, 1122 (10th Cir. 2012). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[3]The district court also ruled that "even if a right to be heard by the [B]oard could be implied, [Mr. Ribeau] waived this right: he admitted he was cognizant of this alleged right but never filed a grievance or made any request to be heard by the [B]oard." Aplt. Appx. at 134. Because we affirm on another basis, we do not address the district court's waiver ruling.

judgment as a matter of law." Fed. R. Civ. P. 56(a). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Doe*, 667 F.3d at 1122 (quotations omitted).[4]

## A. *Mr. Ribeau's Procedural Due Process Claim*

The Fourteenth Amendment prohibits a state from, among other things, depriving a person of "property, without due process of law." U.S. Const. amend. XIV, § 1. "Under the Due Process Clause, procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision . . . ." *Nichols v. Bd. of Cnty. Comm'rs*, 506 F.3d 962, 969 (10th Cir. 2007) (quotations omitted).

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 576 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577.

A legitimate claim of entitlement to a benefit is "created and [its] dimensions are defined by existing rules or understandings that stem from an independent source such as

---

[4]Although the district court addressed Mr. Ribeau's claimed right to a pre-termination hearing in its Rule 59(e) order, *see* Aplt. Appx. at 133, Mr. Ribeau raised this issue in his response to the Defendants' motion for summary judgment, and the parties agree that our standard of review is de novo. *See* Aplt. Br. at 9; Aple. Br. at 4.

state law." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005)

(quotations omitted). If state law gives rise to an entitlement, we still must determine

whether the entitlement "constitutes a property interest for purposes of the Fourteenth

Amendment." *Id.* That question "is ultimately one of federal constitutional law." *Id.* at

757.

Accordingly, this appeal concerns whether (1) under Kansas law Mr. Ribeau had a

legitimate claim of entitlement to a pre-termination hearing before the Board and (2) if

so, whether that entitlement is a constitutionally protected property interest under the

Fourteenth Amendment. Because we decide that Mr. Ribeau did not have a pre-

termination hearing entitlement, we do not reach the second issue.

**1.** *Kansas Law*

Mr. Ribeau argues that under Kansas law he had an implied-contract right to a pre-

termination hearing before the Board. This entitlement, he argues, was created by his

express employment contract, the Handbook, and his and Mr. Katt's deposition

testimony.

We conclude that Kansas courts would not recognize Mr. Ribeau's implied-

contract theory. Under Kansas law, Mr. Ribeau had an express employment contract, not

an implied contract. In addition, Mr. Ribeau's express contract is unambiguous and does

not provide a right to a pre-termination hearing before the Board.

**a.** *Express and Implied Contracts*

-7-

"Contracts are often spoken of as express or implied." *Hyland v. Dewey*, 73 P.2d 1038, 1039 (Kan. 1937) (quotations omitted). "Contracts implied in fact are inferred from the facts and circumstances of the case and are not formally or explicitly stated in words." *Atchison Cnty. Farmers Union Co-op Ass'n v. Turnbull*, 736 P.2d 917, 922 (Kan. 1987). In the employment context, "[t]he implied contract theory recognizes an implied obligation on the employer to not terminate an employee arbitrarily where a policy or program of the employer, either express or implied, restricts the employer's right of termination at will." *Allsup v. Mount Carmel Med. Ctr.*, 922 P.2d 1097, 1100 (Kan. Ct. App. 1996) (quotations omitted).[5]

Where an express employment contract exists, however, Kansas courts have declined to consider implied terms outside the written contract. For example, in *Dickens v. Snodgrass, Dunlap & Co.*, 872 P.2d 252 (Kan. 1994), the plaintiff argued that "her continued employment with pay increases establishe[d] satisfactory performance and created an *implied contract of continuing employment over and above the written contract*." *Id.* at 260 (emphasis added). In rejecting this argument, the Supreme Court of Kansas explained that the plaintiff's implied-contract theory relied on cases that did not "involve[] written contracts of employment establishing the employee's status." *Id.* The court noted that, "[i]n the absence of written contracts, it was necessary [in those cases]

---

[5]In *Allsup*, the plaintiff sued his former employer for wrongful termination. 922 P.2d at 1098. The *Allsup* court made no mention of a written employment contract, and the parties assumed for purposes of summary judgment and appeal that the employer's discipline policies gave rise to an implied contract of employment. *Id.*

to look at all the facts to determine whether there was an implied contract of continuing employment at the time of the commencement of the employment." *Id.*

Before and after *Dickens*, Kansas courts have repeatedly noted the distinction between express contracts and implied contracts. *See, e.g.*, *Stover v. Superior Indus. Int'l, Inc.*, 29 P.3d 967, 971 (Kan. Ct. App. 2000) (concluding that *Dickens* did not foreclose a plaintiff's implied-contract theory because "[i]n this case, there is no written employment contract to modify, and *Dickens* is not on point"); *Kastner v. Blue Cross & Blue Shield of Kan., Inc.*, 894 P.2d 909, 915 (Kan. Ct. App. 1995) ("In this case, Kastner acknowledges that no express contract existed between the parties. Instead, he maintains that an implied-in-fact contract of employment was created . . . ."); *see also Duvanel v. Sinclair Ref. Co.*, 227 P.2d 88, 92 (Kan. 1951) ("An express agreement or covenant excludes the possibility of an implied one of a different or contradictory nature.").[6]

---

[6]Although express and implied contracts are conceptually distinct, Kansas courts have recognized that an implied contract may modify an express contract if the parties have demonstrated "mutual assent, or a meeting of the minds with respect to the proposed amendment." *Dickens*, 872 P.2d at 259 (quotations omitted). However, "[a]n implied contract which modifies a written contract also requires fresh and independent consideration." *Id.* (quotations omitted).

Mr. Ribeau argues that his and Mr. Katt's deposition testimony demonstrate that both men believed classified employees were entitled to a pre-termination hearing before the Board. This testimony is insufficient, however, to establish that an implied contract modified Mr. Ribeau's express employment contract. Mr. Ribeau has not provided evidence of "fresh and independent consideration" establishing an implied contractual provision for a pre-termination hearing.

Because Mr. Ribeau had an express employment contract, we conclude that Kansas courts would not recognize his implied-contract theory.

**b.** *The Terms of Mr. Ribeau's Express Contract*

Although we reject Mr. Ribeau's implied-contract theory, we must determine whether his express employment contract created a legitimate claim of entitlement to a pre-termination hearing before the Board.

If an unambiguous written contract exists, Kansas courts "will not imply an additional term." *Havens v. Safeway Stores*, 678 P.2d 625, 629-30 (Kan. 1984). "When a contract is complete, unambiguous, and free from uncertainty, parol evidence of prior or contemporaneous agreements or understandings tending to vary the terms of the contract evidenced by the writing is inadmissible." *Decatur Cnty. Feed Yard, Inc. v. Fahey*, 974 P.2d 569, 574 (Kan. 1999) (quotations omitted). A contract may incorporate an extraneous writing by reference, however, and the writing "becomes a part of the contract only so far as to effectuate the specific purpose intended." *Starr v. Union Pac. R.R. Co.*, 75 P.3d 266, 269 (Kan. Ct. App. 2003).

Mr. Ribeau had an express employment contract stating that he "may be terminated . . . at any time, for any reason." Aplt. Appx. at 60. The contract also provided that Mr. Ribeau "agree[d] to observe, enforce, and be directed by rules and regulations adopted by the Board." *Id.* Mr. Ribeau argues that the Handbook contains "rules and regulations adopted by the Board" and that it is thus incorporated by reference

-10-

into his employment contract. We agree and look to the Handbook to determine what rules and regulations governed Mr. Ribeau's employment.

Mr. Ribeau contends that three Handbook provisions support his claim that he was entitled to a pre-termination hearing before the Board. The provisions state that (1) the superintendent may suspend employees "until the suspension is resolved by [B]oard action"; (2) the "[B]oard may terminate a classified employee *at any time*, with or *without cause*"; and (3) an employee may file a complaint with a "supervisor concerning a school rule, regulation, policy or decision" and appeal the supervisor's decision to the superintendent, whose decision is final. *Id.* at 68 (emphases added).

None of these provisions, however, provides for a pre-termination hearing before the Board. The first provision relates to suspension, not termination, and does not contain language entitling employees to a Board hearing. The second provision also does not provide for a pre-termination hearing. To the contrary, under this provision the Board may terminate an employee "at any time . . . without cause," which indicates that the Board may terminate an employee *without* holding a pre-termination hearing. Finally, the third provision, which allows employees to file grievances with supervisors and the superintendent, does not mention the Board or a pre-termination hearing.[7]

In his reply brief, Mr. Ribeau also appears to argue that the Handbook provisions,

---

[7]In addition, Mr. Ribeau fails to highlight other relevant portions of the Handbook. For example, one provision states that "[a]ll classified employees are employed on an 'at-will' basis . . . and may be dismissed at any time." Aplt. Appx. at 70.

read together, are ambiguous as to whether he was entitled to a pre-termination Board hearing. He suggests that because the Handbook confers termination power on the Board, and because an employee can challenge termination in the grievance process, the Handbook could be read as requiring an appeal to the Board as the final step of a grievance challenging a termination. *See* Aplt. Reply Br. at 14. He is wrong.

First, as previously noted, the Handbook authorizes the Board to terminate employees, but it says nothing about a pre-termination Board hearing. Instead, it declares that "[t]he Board may terminate a classified employee at *any time . . . without cause*," Aplt. Appx. at 68 (emphases added), and that "[a]ll classified employees are employed on an *'at will' basis* . . . and may be dismissed at *any time*," *id.* at 70 (emphases added).

Second, the grievance provision does not apply to terminations. It permits an employee to file a grievance with a supervisor,[8] but someone who has been terminated is no longer an employee and no longer has a supervisor. In addition, the Handbook places the final grievance decision with the superintendent, but it places the termination decision with the Board. *See* Aplt. Appx. at 68.

Third, even if, as Mr. Ribeau argues, the Handbook could be read as allowing a termination to be grieved and as providing an appeal to the Board as the final step, he cannot overcome the lack of any authorization of a pre-termination Board hearing in the

---

[8] Under the Handbook's grievance provision, an "employee may file a complaint with [a] supervisor concerning a . . . decision that affects the employee." Aplt. Appx. at 68.

Handbook.

"Before a contract is determined to be ambiguous, the language must be given a fair, reasonable, and practical construction." *Liggatt v. Employers Mut. Cas. Co.*, 46 P.3d 1120, 1125 (Kan. 2002). Mr. Ribeau's argument ignores the Board's power to terminate an at-will employee at any time without cause, the inapplicability of the grievance process to termination decisions, and the absence of any reference in the Handbook to a pre-termination Board hearing. The Handbook is unambiguous: it confers no right to a pre-termination Board hearing. We decline to find "ambiguities or uncertainties where common sense says there are none." *Jones v. Reliable Sec. Inc.*, 28 P.3d 1051, 1059 (Kan. Ct. App. 2001).

* * *

In sum, any entitlement Mr. Ribeau had to a pre-termination Board hearing must derive from his express employment contract. The language of that contract is unambiguous and does not provide for a pre-termination hearing before the Board. Mr. Ribeau therefore had no legitimate claim of entitlement to a pre-termination hearing under state law, and the district court was correct to dismiss his § 1983 claim.

## III.    CONCLUSION

For the foregoing reasons, we affirm the district court order granting the Defendants' motion for summary judgment.