FILED
United States Court of Appeals
Tenth Circuit

September 25, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ELIZABETH STEWART,

      Plaintiff - Appellant,

v.

STATE OF OKLAHOMA ex rel.
OKLAHOMA OFFICE OF JUVENILE
AFFAIRS; GENE CHRISTIAN,
individually as former Executive Director
of the Oklahoma Office of Juvenile
Affairs,

      Defendants - Appellees.

No. 14-6010
(D.C. No. 5:12-CV-01297-C)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **PORFILIO**, and **MATHESON**, Circuit Judges.

Elizabeth Stewart appeals from the district court's entry of summary judgment

in defendants' favor on claims relating to the termination of her employment.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

_____

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  Background

Stewart is African American.  In 2004, she began working as the Division Administrator for the Institutional Services Division of the Oklahoma Office of Juvenile Affairs (OJA).  She was responsible for overseeing several youth detention facilities, and she received positive performance reviews.  Over a two-month span in 2011, an assault resulting in a brain injury, a mini riot, and an escape occurred at one of those facilities, the medium-security Central Oklahoma Juvenile Center (COJC).  Mike Moriarty, who is Caucasian, was COJC's Superintendent.  One day after the last of those three events, defendant Gene Christian, a Caucasian who was then OJA's Executive Director, relieved Stewart and Moriarty of their duties.  Christian informed Stewart that she could resign or be fired, and a few weeks later told Moriarty that he could resign, retire, or be fired.  Ms. Stewart decided to resign to avoid the stigma of being fired.  Moriarty chose to retire.

Stewart then sued OJA and Christian, alleging that they discriminated against her on the basis of race and sex when Christian ended her employment and that Christian retaliated against her for complaining more than a year earlier about a racial comment his assistant made.  She also asserted a procedural due process claim against Christian regarding his failure to provide her with a reason for relieving her of her duties.[1]

---

[1]     Stewart raised her race and sex discrimination claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §§ 1981 and 1983 (the latter invoking the

(continued)

Defendants moved for summary judgment on all claims, which the district court granted. Applying the familiar burden-shifting paradigm of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), the court assumed Stewart's resignation amounted to a discharge and held that she established a prima facie case of discrimination.[2] The court then determined that defendants had provided legitimate, nondiscriminatory reasons for discharging her. Christian felt immediate changes needed to be made in view of the three incidents at COJC over the two-month period and the associated bad press OJA was getting. He was also motivated by the fact that the incidents occurred at a time when OJA was trying to end involvement by the United States Department of Justice (DOJ), which had obtained a three-year consent decree in federal court in 2008 concerning conditions of confinement at another OJA facility, the maximum-security L.E. Rader Center (Rader). Rader effectively closed shortly before the first of the three incidents at COJC.

The court next concluded that Stewart failed to demonstrate that defendants' reasons were a pretext for discriminatory intent. Stewart argued she was treated

Equal Protection Clause of the 14th Amendment to the United States Constitution). She raised her retaliation claim against Christian under § 1981 and her due process claim under § 1983. Stewart also asserted other claims, but in this appeal, she has not taken issue with the district court's disposition of them. We therefore do not discuss them.

[2] The same elements apply to disparate treatment claims under Title VII, § 1981, and § 1983, all of which are subject to the *McDonnell Douglas* analysis. *Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991).

differently than Christian and his Chief of Staff, Gary Bolin, but the court determined Christian and Bolin were not similarly situated to her because they had larger roles within OJA than overseeing juvenile facilities. The court reasoned that Moriarty was most similarly situated to Stewart, and Christian treated him the same as he had treated Stewart. The court further distinguished former Rader superintendents, none of whom were ever relieved of their duties despite significant issues there and allegedly constant bad press, because Stewart had not shown similar incidents occurred there within a two-month span and at a time when OJA was trying to conclude the consent decree.

The court next addressed Stewart's argument that Christian should have been fired instead of her or Moriarty because, by closing Rader, he created the conditions at COJC that led to the three incidents. The court concluded this was immaterial because "[t]he relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004) (brackets and internal quotation marks omitted). As Stewart had conceded, at the time Christian relieved her of her duties, she thought it was because of the bad press and was "a way for him to take care of it and show that he was doing something," Aplt. App. at 275, similar to the reasons Christian gave.

The court also determined that no reasonable inference of discrimination by Christian could be drawn from the racial comment his assistant had made,[3] noting that Christian was not present at the time it was made and that, after Stewart informed him of the comment, he promptly instructed his assistant to apologize. Finally, the court addressed Stewart's reliance on another employee's claims of gender discrimination against Christian and OJA. The court observed that Christian had apologized for a flippant comment he had made to the employee, Laura Broyles,[4] and that Broyles's equal-pay claim had been resolved in her favor. The court concluded this evidence was insufficient to create a genuine issue of fact with regard to pretext.

The district court next considered Stewart's retaliation claim against Christian. It granted summary judgment on that claim because her complaint about the racial comment Christian's assistant had made occurred more than a year before Christian relieved Stewart of her duties, and there was no additional evidence to establish causation.[5]

---

[3]    At an OJA Board of Directors retreat, Christian's assistant told a story in Stewart's presence that when the assistant was a teenager, she and some friends dressed up as Ku Klux Klan members for Halloween, with one person painting his face black and wearing a noose around his neck.

[4]    Christian admitted he told Broyles that OJA's budget issues might be resolved if she slept with a state legislator.

[5]    The court also stated that Stewart failed to exhaust her administrative remedies with respect to her retaliation claim against OJA under Title VII. To the extent she stated such a claim, the district court lacked jurisdiction over it due to the failure to

(continued)

- 5 -

Moving to the procedural due process claim against Christian, the district court applied state law to determine whether Stewart had a property interest in her job. *See Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012) (explaining that state law governs that inquiry). Under Okla. Stat. tit. 74, § 840-5.1A(A), an unclassified Oklahoma employee has no right or expectation of continued employment and, consequently, no property interest in her job. The court pointed to Stewart's deposition testimony that she was an unclassified staff member and an at-will employee, and it noted that her written job offer described the position in those terms. The court also pointed out that, although Stewart's position was not among a list of those specifically identified by Okla. Stat. tit. 74, § 840-5.5 as unclassified, another statutory provision (Okla. Stat. tit. 74, § 840-5.15) allows OJA to place an additional forty-one employees into unclassified service. Accordingly, the court held that Stewart lacked the property interest required to maintain a procedural due process claim. *See Ribeau*, 681 F.3d at 1194 (property interest required for such a claim).

## II. Discussion

"We review the district court's summary judgment order de novo, and apply the same legal standards as the district court." *Doe v. City of Albuquerque*, 667 F.3d

exhaust. *See Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1226 (10th Cir. 2014). But we fail to see such a claim in the controlling amended complaint, where the only retaliation claim was against Christian and asserted under 42 U.S.C. § 1981, not Title VII. There is no exhaustion requirement for § 1981 claims. *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1410 n.9 (10th Cir. 1997).

1111, 1122 (10th Cir. 2012). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Doe*, 667 F.3d at 1122 (internal quotation marks omitted).

Applying these standards, we agree in full with the district court's analysis and affirm its decision for substantially the reasons the court gave. This is not an instance where "a claimed business judgment is so idiosyncratic or questionable that a factfinder could reasonably find that it is a pretext for illegal discrimination." *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1169 (10th Cir. 1998); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). ("[A]n employer [is] entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."). We will, however, briefly discuss a few specific points Stewart makes about evidence the district court addressed, and we will discuss evidence the district court did not address in its decision, the omission of which we deem harmless.

Stewart contends Christian fired Moriarty in order to cloak his true objective— ridding himself of Stewart, whom he had inherited when he was appointed Executive

Director of OJA in 2006. In support, she points to Moriarty's testimony that on the day after the third incident, Christian first asked Moriarty what assistance he needed at COJC. Later that day, Christian told Moriarty it looked like he would be getting a new division administrator, thus indicating Stewart was going to be fired. Moriarty offered to resign, but Christian did not respond. Still later that day, Christian relieved Moriarty of his duties and, several weeks later, offered him the choice to resign, retire, or be fired. Stewart claims an inference of discrimination can be drawn from this sequence. But any such inference is speculative, not reasonable.

Stewart also claims the district court erred in crediting Christian's view that the three incidents at COJC complicated OJA's efforts to conclude the Rader consent decree because two of the incidents occurred after the federal district court declined the DOJ's request to extend the decree to COJC after the Rader youths were transferred there. But this argument is faulty because it rests on a slight mischaracterization of Christian's affidavit, where he expressed his concern that the three incidents "would extend the DOJ involvement at a time when we were trying to conclude it." Aplt. App. at 421. It is evident that Christian's concern was DOJ involvement in any respect, not just under the consent decree. Moreover, the federal case was not formally closed until more than a month after the third incident took place. Hence, Christian's concern was not inconsistent with the facts to the point where a reasonable inference of discrimination could be drawn from it.

Stewart notes that, several weeks after the first of the three incidents and before the other two, Christian signed her performance review. The review, which did not mention the incident, indicated she was meeting standards. She also points out that, after the second event, Christian did not discuss them with her. We see nothing of pretext in this since the proffered reason for relieving Stewart of her duties was the cumulative effect of the three incidents.

Stewart complains the district court failed to address evidence that Christian engaged in a pattern of personnel decisions that resulted in white males occupying a number of positions, including Stewart's; that he fired an upper-level female employee early in his tenure as OJA's Executive Director; and that since Stewart's firing, there are no black executive staff in the OJA. But this evidence exists in a vacuum. There is no indication whether any black or female candidates applied for the positions and there is no detail as to why Christian fired the upper-level female employee. Hence, no reasonable inference of pretext can be drawn from this evidence.

The district court also failed to discuss evidence that, sometime during his first year as OJA's Executive Director, Christian was present when OJA showed a video depicting women sitting at a bar and appearing to wear either no pants or a thong, but he did nothing. However, there is no evidence Christian had any role in the decision to show this video, no further detail on his reaction to it, and no allegation that there was any complaint about it such that he might have addressed it. Moreover, the

incident occurred some four years before he relieved Stewart of her duties. Therefore, it would be unreasonable to draw an inference that he was biased from his mere presence and inaction. The same can be said of a skit OJA employees put on, during the same time frame, in which they allegedly mocked someone with a thick Indian accent.

Stewart further points to the fact that when Christian was a state district attorney (apparently many years before his decision to end Stewart's OJA employment), he told a black female assistant district attorney "that she needed to seek other employment, that being a prosecutor, being in the courtroom was probably not her forte." Aplt. App. at 615. Although that person is now a special district judge in Oklahoma County, we fail to see how a reasonable inference of discrimination can be drawn from Christian's opinion that she may not have been a good prosecutor.

Stewart points out an inconsistency between Christian's sworn statement that he told Chief of Staff Bolin he had discussed firing Stewart with OJA's Board of Directors and other testimony that he had not discussed it with the Board. We fail to see how this inconsistency creates a reasonable inference of discriminatory animus.

Stewart also claims she was paid less than the state average for her level and only slightly more than Moriarty despite having significantly more responsibilities than him. But there is insufficient factual development to rule out any nondiscriminatory basis for the pay differential, so no reasonable inference of

discrimination can be drawn from the naked facts. Likewise, several other claims Stewart makes are insufficiently developed to reasonably infer pretext: after complaining about discrimination, she and Broyles were excluded from decisions they should have been involved in; both Stewart and Broyles were "aware of Christian's lack of respect and value of women in the workplace," Aplt. Opening Br. at 40; and that Broyles thought Christian was unconcerned about racially equal treatment of youth offenders held in OJA facilities.

### III. Conclusion

The judgment of the district court is affirmed.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

- 11 -