**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 23, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JAGDISH C. LAUL,

      Plaintiff - Appellant,

v.

LOS ALAMOS NATIONAL
LABORATORIES,

      Defendant - Appellee.

No. 16-2245
(D.C. No. 1:15-CV-00749-JAP-KBM)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **BALDOCK** and **HOLMES**, Circuit Judges.
_____

In this employment case premised on age and national-origin discrimination,

Jagdish C. Laul appeals from a district court order that entered summary judgment in

favor of his employer, Los Alamos National Laboratories (LANL).  Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

BACKGROUND

Laul is a naturalized U.S. citizen from India. He began working for LANL as a safety engineer in 1999, when he was 60 years old. As early as his 2007 performance evaluation, supervisors began noting that his "final work products typically need[ed] significant rework for grammar, and in some cases standard format and acceptable content." Aplt. App., Vol. II at 92. Nevertheless, in early 2010, Laul was promoted to a level four safety-basis analyst.

Laul's performance problems continued, however. In his September 2011 review, his supervisor, Lisa Pansoy-Hjelvik, noted that Laul "has difficulty . . . grasping in-depth technical details that are necessary for the safety analyst[ ] 4['s] ability to develop technically defensible [safety basis] documents before they are issued for internal review." *Id.* at 113. According to Pansoy-Hjelvik, Laul had trouble "distinguishing major from trivial issues," he "refus[ed] to accept . . . guidance from co-workers and managers," and he "manipulat[ed] technical discussions for personal gain." *Id.*

In addition to performance problems, LANL cited Laul for unprofessional workplace behavior. Specifically, in 2011, Laul was given a "Notice of Corrective Action-Written Counseling" for "unprofessional and disrespectful behavior toward" his group leader and his team leader. *Id.* at 196. And in early 2012, he was given a written reprimand for a "continued . . . pattern of unprofessional, disrespectful and disruptive behavior." *Id.* at 199.

Laul contested the corrective-action notice and reprimand by submitting four internal grievances to LANL, complaining that his perceived performance and behavioral

2

problems were the product of "Discrimination or Harassment." *Id.* at 127, 140, 155, 158. The last such grievance was submitted in March 2012. LANL investigated Laul's grievances and concluded they were unfounded. Nevertheless, LANL transferred Laul to a different work group, under the supervision of Ron Selvage.

In May 2012, Laul was assigned to work on unreviewed safety questions (USQs), a process that involves reviewing a nuclear facility's license to determine if a contractor can make changes to the facility. Laul once again had performance issues, prompting Selvage to note in Laul's 2012 performance review: "[Laul] has not shown the amount of understanding of safety basis issues that should be expected from an Analyst 4. Tasks need to be explained several times, and most of his work products need significant revision." *Id.* at 124.

Afterward, Selvage informed the safety-basis division leader, James Miller, that Laul "was having ongoing performance issues," and that "at best," Laul's performance was comparable to that of a level one or two analyst. *Id.* at 204. Miller, along with a senior human-resources officer, David Rudolph, determined that Laul should be placed on a performance action track (PAT) to monitor his progress. In conjunction with the PAT, Laul was also placed on a performance improvement plan (PIP), which required him "to address his performance deficiencies and to timely complete a set number of USQ documents." *Id.* at 205. Both the PAT and the PIP formally began on March 7, 2013.

Starting in May 2013, Selvage and Laul had bi-weekly PAT assessment meetings. Initially, Selvage rated Laul's performance satisfactorily. But by August, Selvage

learned he had been reviewing Laul's work product after it had been revised by qualified evaluators (QEs) and systems engineers (SEs). Selvage also learned that the USQ lead contractor, Lance Platter, had been assigning Laul less difficult USQs to avoid Laul's "constant questioning" about the USQ process. *Id.* at 206. Consequently, Selvage consulted with Miller and Rudolph, who approved the extension of Laul's PAT to more accurately assess his progress.

By mid-October, Selvage concluded that Laul's unedited work product on complex USQs was deficient and that Laul was not performing at the safety-analyst 4 level. He therefore recommended to a safety-basis division leader, James Tingey, that Laul's employment be terminated. Tingey accepted Selvage's recommendation and issued a notice of intent to terminate.

Laul appealed the notice to an associate director, William Bivens. Bivens reviewed the appeal and approved the termination, effective December 6, 2013.

After unsuccessfully applying for other jobs at LANL, Laul filed charges of discrimination and retaliation with the New Mexico Human Rights Bureau. After receiving a right-to-sue letter, Laul filed suit in federal district court, alleging violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1); and the New Mexico Human Rights Act (NMHRA), N.M. Stat. Ann. § 28-1-7.

On LANL's motion for summary judgment, the district court addressed Laul's ADEA, Title VII, and NMHRA claims together in the context of each adverse action he challenged—termination, failure to hire, and retaliation. Doing so, the district court

4

concluded that Laul had failed to raise a genuine issue of material fact for trial, and it granted LANL's motion.

On appeal, because Laul asserts the same evidence and arguments regardless of the statutory basis for recovery, we will structure our analysis in the same fashion as the district court. Thus, we first address Laul's claim for discriminatory discharge, then his claim for discriminatory failure to hire, and finally, his retaliation claim.

## DISCUSSION

### I.  Summary Judgment Standard of Review

We review summary judgment orders de novo. *Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012). A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Ribeau*, 681 F.3d at 1194 (internal quotation marks omitted).

### II.  Discriminatory Discharge

A.     Prima Facie Case

An individual may not be discharged on the basis of national origin, 42 U.S.C. § 2000e-2(a)(1), or age (40 years of age or older), 29 U.S.C. §§ 623(a)(1), 631(a).[1] When

---

[1] Our analysis of Laul's federal claims is equally applicable to his NMHRA claims. *See* N.M. Stat. Ann. § 28-1-7(A) (prohibiting an employer from discharging or refusing to hire a qualified person because of, among other things, age or national origin); *id.* § 28-1-7(I)(2) (prohibiting retaliation); *Juneau v. Intel Corp.*, 127 P.3d

(continued)

5

a plaintiff asserts a discriminatory discharge claim based on circumstantial evidence, as Laul does here, he must establish a prima facie case by showing "[ ]he is a member of a protected class, [ ]he suffered an adverse employment action, and the challenged action occurred under circumstances giving rise to an inference of discrimination." *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015); *see also Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004). On appeal, the parties focus on "[t]he critical prima facie inquiry"; i.e., inference of discrimination, *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005) (internal quotation marks omitted). Under this inquiry, "a plaintiff is only required to raise an inference of discrimination, not dispel the non-discriminatory reasons subsequently proffered by the defendant." *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000). An inference of discriminatory motive can be shown by "a variety of circumstances," ranging from "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus" to "the timing or sequence of events leading to [the] plaintiff's termination." *Plotke*, 405 F.3d at 1101 (internal quotation marks omitted).

To that end, Laul complains he was the only individual in his group who was placed on a PAT and evaluated negatively "even though the USQ process is a collaborative effort." Aplt. Opening Br. at 40-41. But even so, the evidence shows that Laul's *own* work "frequently had to be rewritten" by Platter. Aplt. App., Vol. II at 204.

548, 551-52 (N.M. 2005) (applying federal burden-shifting methodology for NMHRA discrimination and retaliation claims).

Laul next argues that discrimination can be inferred from his receipt of a positive performance evaluation in 2012. This argument rests on the premise that "it is facially illogical to randomly fire an otherwise qualified employee and thereby incur the considerable expense and loss of productivity associated with hiring and training a replacement." *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012) (internal quotation marks omitted). But while Laul's 2012 performance evaluation indicated that in some areas he had fully met expectations, the constant theme throughout the evaluation was that his work required "rewrites," "significant modifications," and "significant revision." Aplt. App., Vol. II at 121, 124. Earlier evaluations likewise noted performance issues, including that his "final work products typically need[ed] significant rework," *id.* at 92, and he had "difficulty in grasping in-depth technical details," *id.* at 109.

Nevertheless, Laul contends an inference of discrimination is demonstrated by LANL giving him an award for saving money and publishing one of his articles. We fail to see how such evidence by itself suggests his termination was the product of discrimination. And Laul does not explain how the timing or sequence of these circumstances shows his termination was motivated by discriminatory animus.

Laul further claims an inference of discrimination is shown by the improper extension of his PAT. But the evidence indicates it was not improperly extended. LANL's PAT guidelines authorize an extension "with approval from the division- or higher-level manager" in "consultation with HR-ER." *Id.* at 211. Selvage sought an extension upon realizing that he had been reviewing Laul's edited work product and he

needed to "obtain a more accurate reading of . . . Laul's PAT performance." *Id.* at 206.

Selvage complied with the guidelines by obtaining Miller's approval and by consulting

with Rudolph before extending the PAT.

Finally, Laul contends the district court erroneously "required [him] to show in his

prima facie case that he [was] similarly situated" to Lawrence Garcia, another USQ

preparer who was not on a PAT. Aplt. Opening Br. at 39. This court has held that a

plaintiff alleging discriminatory discharge is not required to provide a "comparison to a

person outside of the protected class" to establish a prima facie case. *Kendrick v. Penske*

*Transp. Servs., Inc.*, 220 F.3d 1220, 1228-29 (10th Cir. 2000). The district court did not,

however, require any such comparison. Rather, it was Laul who suggested a comparison

to raise an inference of discrimination. *See* Aplt. App., Vol. III at 334 (arguing in

opposition to summary judgment that "[n]o other similarly situated employee . . .

received such strict scrutiny"); *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011)

("One method by which a plaintiff can demonstrate an inference of discrimination is to

show that the employer treated similarly situated employees more favorably."). The

district court merely observed that Laul failed to support his similarly-situated argument.

Laul repeats that failure on appeal, stating only that "younger, non-Indian USQ preparers

did not receive strict scrutiny from . . . Selvage." Aplt. Opening Br. at 38. We do not

consider issues raised in a perfunctory manner, *Hill v. Kemp*, 478 F.3d 1236, 1255 n.21

8

(10th Cir. 2007), and we "will not craft a party's arguments for him," *Perry v. Woodward*, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999).[2]

We conclude that summary judgment was properly entered against Laul based on his failure to establish a prima facie case of discriminatory discharge. But like the district court, we will also consider whether summary judgment is alternatively warranted on the ground that Laul has identified no genuine issue of material fact as to pretext.

B.      Pretext

If a prima facie case of discrimination has been established, the employer must articulate a legitimate, nondiscriminatory reason for the challenged employment decision. *See Sandoval v. City of Boulder*, 388 F.3d 1312, 1321 (10th Cir. 2004). If the employer overcomes that hurdle, the burden shifts to the employee to show that the employer's justification is a pretext for discrimination. *Id.* Pretext can be shown by demonstrating that the stated justification is "so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [it] is unworthy of belief." *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1197 (10th Cir. 2008) (brackets and internal quotation marks omitted).

---

[2] To the extent Laul has claimed that Garcia and Platter are comparators, neither is similarly situated. "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) (internal quotation marks omitted). Garcia occupied a lower-level position than Laul, Aplt. App., Vol. II at 262, and Platter was the "USQ Lead," assigning work to Laul and critiquing his performance, *id.* at 203.

9

LANL justified its firing of Laul on the basis of unsatisfactory work performance. Laul claims pretext is shown by various perceived improprieties in the PAT process. But to the extent he advances as pretext the various minutiae of LANL's handling of his PAT,[3] we stress that "[o]ur role is to prevent intentional discriminatory practices, not to act as a super personnel department." *Dewitt v. S.W. Bell Tel. Co.*, 845 F.3d 1299, 1308 (10th Cir. 2017) (ellipsis and internal quotation marks omitted). In other words, we do not "second guess[ ] employers' honestly held (even if erroneous) business judgments." *Id.* (internal quotation marks omitted). Instead, the determinative question we must reach is whether "a reasonable factfinder could rationally find [LANL's justification for firing Laul] unworthy of credence and hence infer that [it] did not act for the asserted non-discriminatory reason[ ]." *Bennett*, 792 F.3d at 1267 (internal quotation marks omitted). With our inquiry so focused, we turn to Laul's assertions of pretext.

Laul claims pretext is shown by Selvage's reliance on subjective criteria to review his work. Laul cites no supporting evidence, but instead surmises that subjective criteria must have been used because "Selvage was not qualified to evaluate USQs." Aplt. Opening Br. at 45. Selvage testified, however, that while his managerial position did not require the production of USQ documents, he had expertise in reviewing those documents. And even if Selvage did rely on subjective criteria, that is insufficient by itself to show pretext. *See Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1195

---

[3] For example, Laul complains that a "second-line supervisor never signed the PAT," Aplt. Opening Br. at 42, and he (Laul) was refused "copies of the USQs that were part of [a] meeting," *id.* at 47.

(10th Cir. 2006). Indeed, subjective "criteria must play some role in certain management decisions." *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1145 (10th Cir. 2009) (internal quotation marks omitted).

Laul next complains he was criticized for "copying and pasting a portion of a USQ analysis," even though other safety analysts who used the same method were not criticized. Aplt. Opening Br. at 46. To advance his premise, however, Laul conflates the use of that method with the *erroneous* use of that method. Although other safety analysts used the copy and paste method, Laul does not identify any evidence that he was the only analyst criticized for erroneously using that method.

Laul also derives pretext from Tingey's decision to accept Selvage's termination recommendation. Laul complains that Tingey (1) spoke with Selvage only three times to determine if the PAT had been successfully completed, and (2) did not review Laul's "USQ rebuttals even after [his] repeated request[s]." *Id.* at 47. Similarly, Laul complains that Bivens affirmed his termination in just one day, even though Laul had submitted "133 pages of rebuttal documents to review." *Id.* at 48.

First, these pretext assertions reveal little about the motivations underlying Laul's termination. Laul does not explain why Tingey should have spoken with Selvage more than three times before accepting Selvage's recommendation. Nor does Laul indicate how the promptness of Bivens' determination casts doubt on the legitimacy of Selvage's termination recommendation or Tingey's acceptance of that recommendation.

Second, the undisputed evidence shows that Tingey and Bivens considered the recommendation on its merits. Specifically, Tingey testified that he reviewed Laul's

11

work product during the PAT period as well as Selvage's bi-weekly PAT assessments, and he consulted with a human-resources officer before accepting Selvage's recommendation. Bivens testified he evaluated the information Laul provided and consulted with a human-resources officer before affirming the termination. No rational factfinder could derive pretext from these circumstances.

Insofar as Laul complains that Bivens "never received the specialized training required to be a USQ Qualified Evaluator," Aplt. Opening Br. at 48, Laul does not indicate how that fact in any way shows he was terminated because of his age or national origin rather than for unsatisfactory performance. "Mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *DeWitt*, 845 F.3d at 1307 (brackets and internal quotation marks omitted).

Finally, Laul asserts that pretext is shown by many of the same grounds he advanced to show an inference of discrimination. For the same reasons we rejected Laul's attempt to raise a genuine issue of material fact as to a prima facie case, we likewise determine that those grounds do not create a triable issue as to pretext.

We conclude that the district court properly entered summary judgment on Laul's discriminatory discharge claim based on his failure to show pretext.

### III. Discriminatory Failure to Hire

To establish a prima facie case of discriminatory failure to hire, "a plaintiff must show that (1) he applied for an available position; (2) he was qualified for the position; and (3) he was rejected under circumstances which give rise to an inference of unlawful

12

discrimination." *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1278 (10th Cir. 1999) (internal quotation marks omitted). Laul argues he was "qualified for 6 . . . job postings" based on his lengthy safety-analyst experience, which involved the preparation and review of numerous USQs. Aplt. Opening Br. at 50. But he does not identify the qualifications required for any of the jobs.

"[A]t the prima facie stage, a plaintiff must show that [ ]he satisfied an employer's objective qualifications." *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1191 (11th Cir. 2016). Without "evidence about the jobs that became available, we simply have no way of knowing whether the jobs were commensurate with [Laul's] previous duties, compensation, and rank." *Green v. City of St. Louis*, 507 F.3d 662, 667 (8th Cir. 2007); *see, e.g.*, *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1137 (10th Cir. 2004) (concluding that the plaintiff could not establish a prima facie case of discriminatory failure to promote without evidence "suggesting what the [employer's] qualifications for its [position] might have been"). Because Laul has not shown a triable issue as to his prima facie case, summary judgment was appropriate on his failure-to-hire claim.

## IV. Retaliation

To establish a prima facie case of retaliation, the plaintiff must show "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection exists between the protected activity and the materially adverse action." *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016) (internal quotation marks omitted). If the plaintiff establishes a prima-facie retaliation case, the employer must then "come

13

forward with a legitimate, non-retaliatory rationale for the adverse employment action," which then shifts the burden back onto the plaintiff to "show that the [employer's] proffered rationale is pretextual." *Id.* (internal quotation marks omitted). Laul claims LANL retaliated against him by terminating him and by not hiring him because he submitted four internal grievances complaining of discrimination or harassment.

A.    Retaliatory Termination

Laul's retaliatory-termination claim fails on the third element of his prima-facie case. In other words, he has shown no causal connection between his opposition to discrimination and his termination. In this regard, we note that Laul submitted four internal grievances, with the latest dated March 20, 2012. Selvage decided to recommend Laul's termination over a year-and-a-half later, in mid-October 2013. Given the lengthy temporal separation between Laul's submission of grievances and Selvage's termination recommendation, we cannot infer a retaliatory motive, and instead, we require that Laul present additional evidence tying his termination to the grievances. *See Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014). This, he has not done.

Instead, Laul attempts to close the temporal gap by citing a November 13, 2013, email to Selvage and a human-resources officer complaining of discrimination. Granted, the email is close in time to Tingey's November 26, 2013, acceptance of Selvage's recommendation and Bivens' December 6, 2013, affirmance of the termination. But Laul cites no evidence that either Tingey or Bivens was aware he had complained of discrimination. Indeed, Laul testified that he did not mention discrimination to Tingey, Aplt. App., Vol. II at 189, and Laul asserts only that Bivens did not "truly consider[ ]" his

14

appeal documents, Aplt. Opening Br. at 59.  It is axiomatic that an employer cannot retaliate against an employee for protected activity the employer is unaware of.  *See Kendrick*, 220 F.3d at 1234-35.

We conclude that summary judgment was properly entered in LANL's favor on Laul's retaliatory-termination claim.

B.      Retaliatory Failure to Hire

The district court concluded that Laul had shown a prima facie case of retaliatory failure to hire based on the temporal proximity between a January 2014 letter complaining of "harassment and discriminat[ion]," Aplt. App., Vol. III at 302, and the dates his applications for new jobs were rejected.  We decline to reach this issue, as neither party satisfactorily addresses it.  Instead, we proceed to the district court's alternative ruling that Laul failed to show LANL's reason for not hiring him (lack of qualifications) was pretextual.

As we noted earlier, Laul cites no evidence he was qualified for the new jobs he sought.  Instead, as evidence of pretext he points out that (1) Selvage decided not to recommend him for any of the jobs; and (2) Tingey recommended that Laul not be interviewed for those jobs.  But both Selvage and Tingey testified that their decisions were based solely on Laul's termination for poor performance.  Laul identifies no evidence that Selvage and Tingey did not honestly believe the legitimate, nondiscriminatory reason they gave for their decisions or that they did not act in good faith on their beliefs.  *See Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 655 (10th Cir. 2013) ("In determining whether the proffered reason for a decision was [a]

15

pretext[ ] [for retaliation], . . . we do not ask whether the employer's proffered reasons were wise, fair or correct; we ask only whether the employer honestly believed those reasons and acted in good faith upon those beliefs." (brackets and internal quotation marks omitted)). Accordingly, summary judgment was properly entered on Laul's claim for retaliatory failure to hire.

## CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court


Bobby R. Baldock
Circuit Judge