FILED
United States Court of Appeals
Tenth Circuit

May 6, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

JAGDISH C. LAUL,

     Plaintiff - Appellant,

v.

LOS ALAMOS NATIONAL
LABORATORIES,

     Defendant - Appellee.

No. 18-2084
(D.C. No. 1:16-CV-01017-JAP-KBM)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **MATHESON**, and **CARSON**, Circuit Judges.
_____

Jagdish C. Laul appeals from the district court's grant of summary judgment in

favor of Los Alamos National Laboratories ("LANL")[1] on his claims alleging

discriminatory failure to rehire him based on his age and/or national origin, and

retaliatory failure to rehire him based on his previous complaints of discrimination.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

[1] LANL's name has been changed to Los Alamos National Security, LLC.

## I. BACKGROUND

Mr. Laul is a naturalized U.S. citizen from India. In 1999, when Mr. Laul was 60 years old, LANL hired him as a Safety Basis Analyst. Initially, Mr. Laul's job performance was satisfactory and he was even promoted. Beginning in 2007, however, his performance steadily declined. In October 2013, his supervisor recommended to James Tingey, a Safety Basis Division Leader, to terminate Mr. Laul's employment. Mr. Tingey accepted the recommendation and issued a notice of intent to terminate. Following an unsuccessful internal LANL appeal, Mr. Laul's employment was terminated, effective December 6, 2013. *See Laul v. Los Alamos Nat'l Labs.,* 714 F. App'x 832, 834-35 (10th Cir. 2017) (detailing Mr. Laul's internal appeal and job performance problems, including his unprofessional, disrespectful, and disruptive workplace behavior), *cert. denied*, 138 S. Ct. 2602 (2018).

In early January 2014, Richard Marquez, the Executive Director of LANL, told Mr. Laul he could apply for jobs despite having been discharged. Sometime later, Mr. Laul went to LANL's Occupational Medical building and asked to speak with Janet McMillan, a nurse and the wife of LANL's Director, Charles McMillan. Mr. Laul showed Ms. McMillan a picture of himself and the McMillans at a recent holiday event and then asked to speak with her privately. Mr. Laul followed Ms. McMillan into her office and shut the door behind him. He then tried to hand Ms. McMillan an envelope containing documents related to his termination that he wanted delivered to her husband. When Ms. McMillan refused the envelope, Mr.

2

Laul became increasingly angry. Ms. McMillan later reported the incident to her supervisor.

On September 11, 2014, Mr. Laul filed a charge of discrimination related to his termination with the New Mexico Department of Labor, Human Rights Division. He filed an amended charge on October 30.

Between October 20, 2014, and May 4, 2015, Mr. Laul applied for 30 jobs at LANL. Eleven of the job postings were cancelled and are not at issue. As to the remaining 19 jobs, Mr. Laul was not hired for any of them. All of the people hired were younger than Mr. Laul, who was then in his mid-70s, and none were of East Indian origin.

For two job openings as a Safety Basis Analyst, Mr. Tingey, the manager who approved Mr. Laul's termination in October 2013, was the hiring manager. He determined that Mr. Laul did not meet the minimum job requirements for a Safety Basis Analyst because he had recently failed at the same job.

Barbara Pacheco, a Human Resources employee, reviewed and screened the applications for an Operations Manager job. She was aware of Mr. Laul's previous performance issues and his discrimination complaints. Ms. Pacheco said that she did not select Mr. Laul for an interview because he did not have the necessary management experience.

Both Mr. Tingey and Ms. Pacheco said they did not consider Mr. Laul's age, race, national origin, or previous complaint of discrimination in making their decisions.

The hiring managers for the remaining 16 jobs did not know that Mr. Laul had been terminated or that he had filed discrimination charges against LANL. Nor did they consider Mr. Laul's age, race, or national origin in making their decisions. Instead, they decided not to interview Mr. Laul because he either lacked the minimum qualifications or was not the best qualified applicant.

In June 2015, Mr. Laul returned to the Occupational Medical building and again asked to see Ms. McMillan. This time, Ms. McMillan met with Mr. Laul in the lobby. Mr. Laul again tried to give her the documents for delivery to her husband. When Ms. McMillan refused, Mr. Laul became so aggressive that he drew the attention of a physician assistant, who told him to leave. Ms. McMillan reported the incident to Mr. Marquez, who in turn informed Michael Lansing, the Acting Associate Director for Operations and Business. On July 1, Mr. Lansing and LANL Personnel Security issued a "Be On The Lookout" ("BOLO") for Mr. Laul. LANL uses a BOLO to alert personnel that the BOLO subject is not permitted on the property and should be reported to security if he attempts to enter or is seen on the premises.

In August 2015, Mr. Laul filed his first suit against LANL for discriminatory discharge, failure to hire, and retaliation. In September 2016, while LANL's motion for summary judgment was pending in the first suit,[2] Mr. Laul filed a second suit in which he asserted that LANL failed to rehire him based on his age and national origin

---

[2] The district court granted summary judgment in favor of LANL, and this court affirmed on appeal. *See Laul*, 714 F. App'x at 834, 841.

4

in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1), ("ADEA"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1); and the New Mexico Human Right Act ("NMHRA"), N.M. Stat. Ann. § 28-1-7. He also claimed that LANL failed to rehire him in retaliation for his previous charge of discrimination in violation of Title VII and the NMHRA. The district court granted summary judgment in favor of LANL, and this appeal followed.

## II. STANDARD OF REVIEW

"We review summary judgment determinations de novo, applying the same standard as the district court. At this stage of the litigation, we view facts in the light most favorable to the non-moving party and draw all reasonable inferences in [his] favor." *DeWitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1306 (10th Cir. 2017) (citations, ellipses, brackets and internal quotation marks omitted). "Even so, the non-movant . . . must marshall sufficient evidence requiring submission to the jury to avoid summary judgment." *Id*. (brackets and internal quotation marks omitted).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *DeWitt, 845 F.3d at 1306.* (internal quotation marks omitted).

## III. ANALYSIS

### A. *Age and National Origin Discrimination*

5

The district court addressed Mr. Laul's claims for age and national origin discrimination together because he used the same evidence to support both claims. We do the same.

1. **Legal Background**

"Where, as here, an employee's [Title VII] or [ADEA] claim relies exclusively on circumstantial, rather than direct, evidence, we apply the burden shifting scheme of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973)." *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007). The *McDonnell-Douglas* burden-shifting analysis also applies to claims under the NMHRA. *See Juneau v. Intel Corp.*, 127 P.3d 548, 551 (N.M. 2005) ("When considering a violation of the NMHRA," the New Mexico Supreme Court "has used the [*McDonnell Douglas*] methodology").[3]

Under *McDonnell Douglas*, Mr. Laul has the burden to establish a prima facie case of failure to hire based on his age and/or national origin. He "must show that (1) he applied for an available position; (2) he was qualified for the position; and (3) he was rejected under circumstances which give rise to an inference of unlawful discrimination." *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1278 (10th Cir. 1999) (internal quotation marks omitted). If Mr. Laul carries his burden, LANL must then

---

[3] For the first time on appeal, Mr. Laul argues that the district court "erred in applying federal standards to [his] claims under the [NMHRA]." Aplt. Opening Br. at 46. Setting aside the fact that we generally do not consider arguments raised for the first time on appeal, Mr. Laul does not say what standard the district court should have applied to these claims. In any event, the court applied the correct standard.

come forward with a legitimate, non-discriminatory reason for its failure to hire him. If LANL makes this showing, the burden shifts back to Mr. Laul to show that LANL's proffered justification is pretextual. *See Timmerman*, 483 F.3d at 1113.

"Under our precedents, a plaintiff can establish pretext by showing the defendant's proffered non-discriminatory explanations for its actions are so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude they are unworthy of belief." *Johnson v. Weld Cty.*, 594 F.3d 1202, 1211 (10th Cir. 2010) (brackets and internal quotation marks omitted). "[O]ur role isn't to ask whether the employer's decision was wise, fair or correct, but whether it honestly believed the legitimate, nondiscriminatory reasons it gave for its conduct and acted in good faith on those beliefs." *Id*. (brackets and internal quotation marks omitted).

2. **Analysis**

For purposes of this appeal, we assume that Mr. Laul could establish a prima facie case of discrimination. The parties do not dispute that LANL articulated a legitimate, nondiscriminatory reason for its decisions not to rehire Mr. Laul. Thus, the issue is whether Mr. Laul established pretext. We agree with the district court that he failed to do so.

Mr. Laul argues that LANL's hiring managers did not honestly believe his qualifications were lacking or believe there were better qualified candidates. He contends the managers manufactured these reasons and argues his age and/or national origin was the real reason he was not rehired. But it is not enough for Mr. Laul to assert his belief that he was better qualified than the other applicants. "[T]o suggest

7

that an employer's claim that it hired someone else because of superior qualifications is pretext for discrimination rather than an honestly (even if mistakenly) held belief, a plaintiff must come forward with an overwhelming disparity in qualifications." *Id*. (internal quotation marks omitted). *See also Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1309 (10th Cir. 2005) (per curiam); *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1319 (10th Cir. 1999), *overruled on other grounds*, *Nat'l R.R. Passenger Corp. v Morgan*, 536 U.S. 101 (2002).

Mr. Laul presents a few examples to allege that a hiring manager improperly considered his resume, education, or experience. But "[t]o support an inference of pretext, to suggest that something more nefarious might be at play, a plaintiff must produce evidence that the employer *did more than get it wrong*." *Id*. (emphasis added). "He . . . must come forward with evidence that the employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda." *Id*.

We also reject Mr. Laul's attempt to prove pretext by the sheer number of jobs he applied for but failed to get an interview. To prove pretext on the theory he was better qualified than the other candidates, Mr. Laul must proffer evidence of an "overwhelming disparity" between his qualifications and those of the successful candidate, which necessarily involves an individualized consideration of the particular candidates for a particular job. He has failed to do so.

## B. *Retaliation*

1. **Legal Background**

A claim of Title VII retaliation can be proven with direct evidence or by reliance on the *McDonnell Douglas* framework. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Under the latter, a plaintiff must first "raise a genuine issue of material fact on each element of the prima facie case." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (citation omitted). The burden then "shifts to the employer to offer a legitimate nondiscriminatory reason for its employment decision." *Id*. If the employer meets its burden, "the burden then reverts to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." *Id*. (internal quotation marks omitted).

To establish a prima facie case of Title VII retaliation, Mr. Laul "must show (1) that [he] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Khalik*, 671 F.3d at 1193 (internal quotation marks omitted). To establish a causal connection, a plaintiff "must present evidence of circumstances that justify an inference of retaliatory motive." *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014) (internal quotation marks omitted).

2. **Analysis**

The district court found that Mr. Laul established the first two elements of a prima facie case but failed to establish the third element—a causal connection between his last protected activity and the decision not to rehire him. We agree.

The hiring managers for 16 of the 19 jobs had no knowledge that Mr. Laul had filed charges of discrimination against LANL. As such, there is no evidence of any circumstances that would justify an inference of a retaliatory motive. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1234-35 (10th Cir. 2000) (affirming dismissal of retaliation claim on summary judgment where plaintiff presented no evidence that decisionmaker knew of plaintiff's protected activity at time decision was made).

Mr. Laul argues that the district court made an improper credibility determination on summary judgment because it "believed [LANL's] evidence that the hiring managers other than Mr. Tingey and Ms. Pacheco did not have knowledge of [his] complaints of discrimination." Aplt. Opening Br. at 55. The court, however, did not make a credibility determination. It determined that Mr. Laul failed to present evidence sufficient to create a genuine issue of material fact as to whether his protected activity caused the hiring decisions. Mr. Laul merely speculated that the hiring managers reviewed his personnel file, which contained information about his discrimination charges. But to "defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

Mr. Tingey and Ms. Pacheco knew about Mr. Laul's charges of discrimination but decided not to hire him. But this occurred in April 2015, nearly six months after his last protected activity in October 2014, when he filed the amended charges with the state agency. This gap between the protected activity and the adverse action was

10

too long to support an inference of causation. "[W]here a gap of three months or longer has occurred, a plaintiff must present other evidence—more than mere speculation, conjecture, or surmise—to establish that [his] protected activity was a but-for cause of the adverse employment action. *Bekkem v. Wilkie*, 915 F.3d 1258, 1271 (10th Cir. 2019) (internal quotation marks omitted).

Finally, in opposing summary judgment, Mr. Laul argued that LANL "further retaliated against [him] to ensure that he cannot secure a position at LANL by issuing a BOLO against [him]." Aplt. App., Vol. 3 at 742. Even if we assume Mr. Laul was engaged in protected activity when he confronted Ms. McMillan, we agree with the district court that "the evidence clearly shows that the BOLO was issued because of the inappropriate and threatening nature of Plaintiff's conduct in his encounters with Ms. McMillan"—not because of a discriminatory or retaliatory motive. *Id*., Vol. 6 at 870. Mr. Laul failed to present any "evidence that members of the security department, who issued the BOLO, knew about Plaintiff's prior complaints of discrimination." *Id*. As such, he could not show that protected activity caused issuance of the BOLO.

## IV.  CONCLUSION

We affirm the judgment of the district court.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

11